Reversed and remanded.

---

## ED. BEAN V. THE STATE OF TEXAS.

### IN COURT OF APPEALS, TYLER TERM, 1884.

*Murder—Indictment.*—Indictment for murder need not allege that the killing was "unlawfully done," nor the defendant was "a person of sound memory and discretion ;" nor that the deceased was "a reasonable creature in being."

*Practice—Confessions.*—The confession of an accused is admissible against him when, in connection with his confession, he makes a statement of facts and circumstances found to be true, and which conduce to establish his guilt. By means of the statement of the accused in this case the gun with which the murder was committed was found where he said he had secreted it. *Held*, that his confession under the rule cited was properly admitted in evidence on behalf of the state.

*Same—Jury Law,*—In polling the jury after verdict, the defendant is entitled to no more than a catagorical answer from each juror to the question : "Is that your verdict ?" The accused in this case was charged as a principal. The verdict, affirmed by each juror on being polled, found him "guilty of murder in the first degree as charged in the indictment." The defense proposed to ask each juror if he intended to find the accused guilty as a principal or as an accomplice. *Held*, that the court properly refused to permit such examination.

*Same—Challenge to Array,*—Article 624 of the C. C. P. enumerates the only grounds upon which a challenge to the array of jurors can be predicated. Again the defense did not exhaust its peremptory challenges in the formation of a jury, and for this additional reason the challenge to the array was properly overruled.

*Principal and Accomplice.*—Evidence which shows an accused to be guilty as an accomplice to murder, will not support his conviction as a principal.

*Same—Distinguished.*—For a distinction between principals and accomplices in crime, see Cook's case, 14 Tex., Ct. App., 96, and O'Neals case, id. 582.

*Same—Charge of the Court.*—Charge of the court authorizing a conviction as a principal upon proof that would show guilt only as an accomplice, was error ; and failure of the court to charge exactly to the contrary, was likewise error.

Appeal from Gregg county.

STATEMENT.

The charging part of the indictment in this case alleged "* * * that one Ed. Bean, late of said county, on the twenty-first day of May, A. D. 1883, and in said county and state of Texas, did then and there, with malice aforethought, kill and murder one Charles Stevens, by then and there shooting him with a shot gun, contrary," etc. Under this indictment the appellant was convicted of murder in the first degree and was awarded the death penalty.

The state's evidence, and none other was introduced, tends to show that the fatal shot was fired from ambush by one Amon Stevens, with whom the appellant, though not present at the killing, was acting in concert, and that he, Amon Stevens, fired the shot from a gun provided him by the appellant for the purpose. The strongest testimony connecting the appellant with the offence in any capacity is that of the Hon. F. J. McCord, which is the subject matter of the second head-note of this report. In so far as it bears upon the confession of the appellant, it is here copied in full. Judge McCord testified as follows : "* * * When I reached Gladewater on my return from the field (the defendant then being under arrest) I asked defendant what he had done with the gun used in the killing. The defendant first said that he knew nothing about it. I then told him that he had better tell—that it would be the best for him to tell. He, the defendant, then said, that the gun was behind the cross fence in his father's field ; that he carried it there the previous night after his release from his first arrest ; that he took it out of the old barn where he put it the Sunday evening before for Amon Stevens ; that he got the gun at Charley Ford's below Longview, and carried it to the Wilkins mill on the train, where he got off the train on Sunday evening, and thence took it to the barn and left it for Amon Stevens ; that Amon Stevens asked him to get the gun

and leave it in the barn for him ; that Amon Stevens told him that Charley Stevens run over him long enough, and that he, Amon, wanted the gun to kill Charley Stevens ; that on putting the gun in the barn, he, defendant, notified Amon where he would find both the gun and the ammunition ; that the said gun was loaded with five bullets in each barrel, and that Amon Stevens shot Charley Stevens with one of the barrels so loaded ; that one barrel of the gun was still loaded and the other was empty; that Amon Stevens asked him to borrow a pistol for him, which he tried to do, but failed.

"According to the directions of the defendant, I went to the cotton field of his father, and behind the cross-fence, found the gun and a bottle each of powder and shot, which the defendant told me were with the gun. Those bottles resembled the bottles in evidence. I took the tracks from where the gun was found and followed them to within thirty or forty steps of the defendant's father's door. This space had been recently cleared, and I could follow them no further. They went, however, toward the house and barn. On onloading the loaded barrel of the gun I found yellow paper wadding, powder and five buck-shot. The other barrel had been recently discharged. The defendant told me that after the gun fired, Amon Stevens came up to where he was, from the direction of Charley Stevens' field, and said to him : "I have laid Charley out ; keep mum." The defendant was under arrest when he made these statements to me, and I did not warn him."

### OPINION.

I. It was not necessary to state in the indictment that the killing was "unlawfully done." (Thompson v. State, 36 Tex., 326.) Nor was it necessary to allege that the defendant was a "person of sound memory and discretion," nor that the deceased was a " reasonable creature in being-" According to repeated decisions the indictment in this case is in all particulars a good one. (Ogden v. Satte, 15 Ct. App., 454 ; Moore v. State, id. 1 ; Drye v. State, 14 Ct. App., 185 ; Bohannon v. State, id. 271; Walker v. State, id. 609; Dwyer v. State, 12 Ct. App., 535.

II. There was no error in admitting in evidence the confession of the defendant. In connection with such confession he made a statement of facts and circumstances which were found to be true, and

which conduced to establish his guilt. By means of his statements the gun with which the murder was committed was found at the place where he stated he had secreted it. (Code Crim. Proc., 750 ; Cuntain v. State, 15 Ct. App., 485; Weller v. State, 16 Ct. App., 200.)

III. The verdict of the jury found the defendant "guilty of murder in the first degree as charged in the indictment," etc. At the request of the defendant the jury was polled ; the verdict was read alone to each juror, and each juror was asked if it was his verdict, and each distinctly answered that it was. Defendant proposed to ask the jurors if they intended to find the defendant guilty as a principal or as an accomplice. This was not allowed by the court. We perceive no error in the action of the court in polling the jury ; but think it was in strict accordance with the statute. (C. C. P., art. 710.) It was expressly stated in the verdict that the defendant was found guilty of murder in the first degree " as charged in the indictment," and he was charged in the indictment as a principal and not as an accomplice. When the jurors answered that this was their verdict, it is to be presumed that they understood the meaning of the same. It was never intended, we think, in polling a jury, to permit the jurors to be interrogated further than to ask each of them the direct question : "Is that your verdict ?" If he answer in the affirmative, his answer is conclusive, and further inquiry is not permissible. If the rule were otherwise, each juror might be subjected to a searching examination with a view to showing that he had been mistaken in the verdict he had rendered and solemnly announced to be his verdict. Such a practice would be unreasonable and detrimental to the ends of justice.

IV. Defendant's challenge to the array of jurors summoned as talesmen was properly overruled, because it was not such a challenge as it warranted by the law. (C. C. P., art. 624.) It further appears that the district attorney proposed to excuse the persons summoned as jurors by the objectionable officer ; but that the defendant declined to agree to this. It further appears that the defendant did not exhaust his peremptory challenges in the formation of the jury. He had six peremptory challenges remaining when the jury was completed. (Woodward v. State, 9 Ct. App., 412 ; Cavitt v. State, Id., 199; Lum v. State, 11 Id., 483; Loggins v. State, 12 Id., 65.)

V. An issue raised by the evidence in the case is whether, if guily of the murder, the defendant was guilty as a *principal* or as an *accomplice.* Being indicted as a principal, it is well settled that if he was guilty as an accomplice but not as a principal, he could not be convicted legally. under this indictment. (Truitt v. State, 8 Ct. App., 148; McKeen v. State, 7 Id., 631; Sims v. State, 10 Id., 131.) It is earnestly and ably insisted by counsel for defendant that the learned judge who presided at the trial of this case failed to instruct the jury fully and correctly upon this issue, but, on the contrary misdirected them in his charge.

That our views with reference to this subject may be made more intelligible, we will here insert those portions of the charge which relate to the law of principals and accomplices. The jury are first instructed as follows : "You are instructed that all persons are principals who are guilty of acting together in the commission of an offence ; and principals, whether separately or jointly indicted, may be legally prosecuted and convicted as such, provided the evidence adduced against each one clearly and satisfactorily establishes the guilt of each. When an offense has been committed, the true critirion for determining who are principals is, Did the parties act together in the commission of the crime ? Was the act committed in pursuance of a common intent, and in pursuance of a previously formed design, in which the minds of both united and concurred ? If so, then the law is that both are alike guilty, provided the offense was actually committed during the existence and in execution of the common design and intent of both, whether in point of fact both were actually bodily present on the ground while the offense actually took place or not." This charge is a liberal copy of the charge given in Scales v. State, 7 Tex. Ct. App., 361, and also in Cook v State, 14 Ct. App., 96, and approved by this court.

In the last cited case (Cook v. State) the distinction between principals and accomplices was very carefully considered, and more thoroughly and definitely explained than in previous decisions. We quote from the opinion in that case as follows : We are of opinion that the proper distinction between these two characters of offenders is this—The acts constituting an accomplice are auxiliary only, all of which may be, and are performed by him, anterior and as inducements to the crime about to be committed, whilst the principal offen-

der not only may perform some antecedent act in furtherance of the commission of the crime, but when it is actually committed, *is doing his part of the work* assigned him in connection with the plan and furtherance of the common purpose, whether he be present when the main fact is to be accomplished, or not. When the offense is committed by the perpetration of different parts which constitute one entire whole, it is not necessary that the offenders should be, in fact, together at the perpetration of the offense, to render them liable as principals. In other words, an accomplice, under our statute, is one who has *completed his offense before the crime is actually committed,* and whose liability attaches after the commission by virtue of his previous acts in bringing it about through the agency of or in connection with third parties. The principal offender acts his part individually, in furtherance of, and *during the consummation* of the crime." In the subsequent case of O'Neal v. State (14 Ct. App., 582,) the foregoing distinction was approved.

We must confess that to our minds the distinction between these two characters of offenders is often shadowy and indistinct. It is as clearly drawn in Cook's case as it is possible perhaps to draw it. The dividing line between the two is the commencement of the commission of the principal offense. If the parties *acted together* in the *commission* of the offense, they are principals. If they agreed to commit the offense together, but did not *act together* in its commission the one who actually committed it is the principal, while the other, who was not present at the commission, and who was not in any way aiding in its commission, as by keeping watch, or by securing the safety or concealment of the principal, would be an accomplice. To constitute a *principal*, the offender must either be present when the crime is committed, or he must do some act during the time when the offense is being committed, which connects him with the act of commission in some of the ways named in the statute. When the acts committed occur *prior* to the commission of the principal offense, or *subsequent* thereto, and are independent of, and disconnected with the *actual commission* of the principal offense, and no act is done by the party during the commission of the principal offense in aid thereof. Such party is not a principal offender, but is an accomplice or an accessory according to the facts. We think th e charge of the court we have quoted, while not as full and explanatory of the distinction between principals and accomplices as in the

opinion of Presiding Judge White in Cook v. State, *supra*, is never theless substantially and practically sufficient, and it was not incumbent upon the court to instruct the jury more particularly and elaborately upon this question.

In a subsequent part of the charge, when the learned judge applies the law to the evidence, the jury are instructed as follows : "If you believe from the evidence in this cause that, prior to the killing of the deceased, Charles Stevens, it was agreed, understood and determined, by and between the defendant Ed. Bean and one Amon Stevens, that the latter should kill Charles Stevens, and that it was further agreed, understood and determined that the defendant, Bean, should procure a gun, with which Amon should kill the deceased, Charles Stevens, and that in pursuance of this design the defendant did procure a gun and place it in the hands or Amon Stevens, or place it where the said Amon was to and did get the said gun, and that in pursuance of the agreement so formed between them—defendant and said Amon—the latter, in the county and state aforesaid, and prior to the 23d day of November, 1883, did, with express malice as defined to you hereinbefore, shoot with a gun and thereby kill the deceased, Charles Stevens, and that this killing was done during the existence and in the execution of the common design of said Amon Stevens and defendant, (if any such common design existed,) that the said Amon should kill the deceased, then the defendant would be guilty of murder in the first degree, whether he were actually bodily present at the time and place of killing, or not, and if you so believe, you will so find." As we understand this charge, and as we understand the distinction between principals and accomplices, the state of facts presented in the charge would constitute the defendant an accomplice, and not a principal. The facts recited are precisely those which constiute an accomplice, (P. C., art. 79), but do not constitute of themselves a principal offender, be-because they do not show that at the very time of the commission of the offence by Amon Stevens, the defendant was in any way aiding, assisting or acting together with said Amon Stevens in the act of homicide or in the furtherance of it. As stated in the charge, the act of the defendant was *completed* anterior to the killing, and was merely auxiliary thereto.

As a legal proposition, however, the charge is unquestionable cor-

rect. If the defendant was guilty of the acts recited, he was guilty of murder in the first degree, but he was guilty as an accomplice and not as a principal offender. This the learned judge failed to explain to the jury, nor does he in any portion of his charge instruct the jury that, if they believe from the evidence that the defendant was an accomplice in the murder, and not a principal in it, they could not convict him under the indictment which charged him only as a principal. In this connnction, the defendant requested the court to give the following special charge: "You are further charged that the defendant, Ed. Bean, being charged as a principal offender, he cannot, under the code of this state, be convicted as an accomplice." This was refused, and we think erroneously. Had the learned judge given this instruction, his otherwise admirable charge would have been unexceptionable. Without this addition, however, the issue as to whether or not the defendant was guilty as a principal or as an accomplice was not submitted to the jury, but on the contrary the jury were in effect told that, although the defendant was guilty as an accomplice, he still might be convicted properly under the indictment charging his as a principal. For this error the judgment of conviction must be reversed. It is true that this objec·tion to the conviction is a technical one, and apparently without reason to support it. It is nevertheless a long and well established rule of the law, and without pausing now to discuss and examine its utility or wisdom, it is safe to say that, upon investigation and reflection, it will be found, like many other technicalities of the law, to be founded upon solid and sufficient reasons, and that it would be dangerous to depart from or disregard it.

We will here again take occasion to suggest to district and county attorneys the very great utility of inserting several counts in the indictment in cases like this, where the evidence shows one or the other of two or more offences growing out of the same transaction. In this case, the evidence presented three offenses, of either of which the jury might have found defendant guilty under proper counts in the indictment, viz : Murder as a principal, accomplice to murder, and accessory to murder. From the evidence before us, the defendant, by his own confession, was guilty both as an accomplice and as an accessory, and yet under the indictment it was found he could not legally be convicted of either of these offenses. While

the evidence is clear as to his guilt of either of these two offenses, it is not so clear that he was guilty as a principal, though, if the charge requested by his counsel and refused, which we have quoted, had been given, and the jury thus having had submitted to them the issue as to whether he was a principal or an accomplice, had found that he was a principal, we would not have disturbed the conviction.

Because of the error in the charge of the court, and the error in refusing to give the special charge requested, the judgment is reversed and the cause is remanded.

Willson, J.

Reversed and remanded.